*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 41**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CHRISTY BUTLER
*Appellant,*

*v.*

CORPORATION OF THE PRESIDENT OF THE
CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,
*Appellee.*

CHRISTY BUTLER
*Petitioner,*

*v.*

THE HONORABLE THOMAS L. KAY
*Respondent.*

Nos. 20130612, 20130709
Filed October 3, 2014

Second District, Farmington
The Honorable Thomas L. Kay
No. 110701349, 110701349

Attorneys:

Linda M. Jones, Lindy W. Hamilton, Troy L. Booher,
Erin Bergeson Hull, Robert W. Gibbons, Salt Lake City,
for appellant and petitioner

Stephen J. Trayner, Peter H. Christensen, Alexander Dushku,
Swen R. Swenson, Kathryn Tunacik Smith, Salt Lake City,
for appellee

Brent M. Johnson, Salt Lake City, for respondent

JUSTICE PARRISH authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE
NEHRING and JUSTICE DURHAM joined.

JUSTICE LEE filed a dissenting opinion.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1 This case comes before us on cross-motions for summary disposition and on a petition for an extraordinary writ. The issues presented in the motions and the petition are (1) whether an interlocutory decision is subject to the implementing order requirements of rule 7(f)(2) of the Utah Rules of Civil Procedure and, if so, (2) whether a rule 54(b) certification can satisfy the rule 7(f)(2) requirements for an interlocutory decision. We answer both questions in the affirmative but explain that for a single order to satisfy both rule 54(b) and rule 7(f)(2), it must meet the requirements of both rules.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This appeal stems from Christy Butler's personal injury suit against Lauren K. Ford and the Corporation of the President of the Church of Jesus Christ of Latter-day Saints (COP). Butler filed a complaint alleging that she was injured in an automobile accident caused by Ford's negligent driving. The complaint also alleges that Ford was an agent of COP acting within the scope of the agency relationship at the time of the accident. Thus, Butler seeks to hold COP vicariously liable for Butler's injuries under a theory of respondeat superior.

¶3 COP moved for summary judgment, seeking dismissal of all of Butler's claims against it. The district court granted COP's motion in a memorandum decision titled "Ruling and Order on Motion for Summary Judgment" (Summary Judgment Ruling). COP did not submit a proposed implementing order with its motion for summary judgment, nor did it serve Butler with a proposed order within fifteen days of the district court's Summary Judgment Ruling, as required by rule 7(f)(2) of the Utah Rules of Civil Procedure. And the Summary Judgment Ruling itself did not state that no further order was required. As a result, the district court did not enter an order implementing the Summary Judgment Ruling.

¶4 Approximately a month after the district court issued its Summary Judgment Ruling, COP filed a motion for rule 54(b) certification of final judgment, in which it requested that the court certify the Summary Judgment Ruling as final for purposes of appeal. COP included with its motion a proposed "Order Directing Entry and Certification of Final Judgment under Rule 54(b)," but did not serve the proposed order on Butler prior to filing it with the

court. Butler did not oppose the motion, and the district court subsequently signed and entered the proposed order (Certification Order). The order stated:

> IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs' [*sic*] claims against COP be and are dismissed with prejudice and that . . . [t]he Summary Judgment in Favor of Defendant COP . . . is a final judgment of the court under Rule 54(b) of the Utah Rules of Civil Procedure, and the Court expressly *directs* entry and certification of final judgment to that effect.

(Emphasis added.) The clerk of the court thereafter made a docket entry stating, "Case Disposition is Dismd w [*sic*] prejudice."

¶5 COP did not serve the signed Certification Order on Butler as required by rules 5(b)(2)(A) and 58A(d) of the Utah Rules of Civil Procedure. And Butler alleges that although her counsel "regularly monitored" the online docket through "one of the court's approved e-filing providers," the Certification Order did not appear on the e-filing provider's system until over a month after it had been entered. Thus, according to Butler, she was unaware that the Certification Order had been signed and entered until more than thirty days had passed from its entry.

¶6 Operating under the assumption that two orders were still forthcoming—a rule 7(f)(2) order implementing the court's Summary Judgment Ruling and a rule 54(b) certifying order (as opposed to an order "*direct[ing]* entry and certification")—Butler did not file a notice of appeal upon learning of the Certification Order. Instead, Butler filed what she titled a "Motion to Proceed with Her Appeal." In the motion, Butler explained that she believed her time to appeal the Summary Judgment Ruling had not begun to run because neither party had filed an implementing order for the Summary Judgment Ruling and the Certification Order alone did not constitute a final order.

¶7 Butler alternatively argued that if the time for appeal had begun to run on the day the Certification Order was entered, the court should grant Butler an extension of time to appeal pursuant to rule 4(e) of the Utah Rules of Appellate Procedure. Butler argued that "the unusual actions" that had taken place following the Summary Judgment Ruling "violated the Rules of Civil Procedure" and had been "beyond Plaintiff's control." Butler filed a proposed

order with her motion, which she alleged was both rule 7(f)(2) and rule 54(b) compliant.

¶8    COP opposed Butler's motion, arguing that "[a] final Rule 56 Order has been entered and a Rule 54(b) motion has been granted certifying that Order as final.  Nothing more was necessary to start the running of time for Plaintiff to file a notice of appeal."  COP further argued that Butler should not be granted additional time to file a notice of appeal because Butler had not demonstrated excusable neglect or good cause as required by rule 4(e) of the Utah Rules of Appellate Procedure.  Specifically, COP alleged that, contrary to Butler's assertion that there had been a glitch in the e-filing service provider's system, Butler had simply failed to diligently check with the clerk of the court to determine whether the rule 54(b) order had been entered.[1]  COP also opposed Butler's proposed order, arguing that "[t]he court has already issued a final [rule 7 compliant] order

---

[1] During the hearing on Butler's motion to proceed with her appeal, COP presented evidence that the reason the Certification Order did not appear on Butler's e-filing account until over a month after it had been entered was because Butler's counsel had failed to refresh the electronic docket.  Therefore, even though Butler's counsel regularly monitored the e-filing account, counsel's negligent failure to hit the "refresh" button each time it returned to monitor the electronic docket resulted in counsel not realizing that the Certification Order had been entered.

While user error may have played a role in Butler's lack of notice of the Certification Order, other circumstances beyond Butler's control contributed to the problem.  Specifically, although Butler had voluntarily chosen to use the court's e-filing system prior to the court-imposed mandatory e-filing deadline, *see* UTAH R. JUD. ADMIN. 4-503, COP had not.  Because COP filed its motion for rule 54(b) certification and its proposed rule 54(b) order through traditional filing procedures, COP was required to use traditional means (i.e., U.S. mail, hand delivery, overnight mail, facsimile, or email) to serve Butler with a copy of the signed Certification Order.  *See* UTAH R. CIV. P. 58A(d) (2013) ("A copy of the signed judgment shall be promptly served by the party preparing it in the manner provided in Rule 5.").  But COP never served Butler with the signed order as required by rule 58A(d).  And while failure to comply with rule 58A does not affect the timing for filing a notice of appeal, it is relevant to a determination of whether there is good cause to extend the time for appeal under rule 4(e) of the Utah Rules of Appellate Procedure.

on Defendant COP's Motion for Summary Judgment" through its Summary Judgment Ruling.

¶9 The court held a hearing on Butler's motion to proceed with her appeal. After the parties presented their arguments, the district court ruled from the bench. Without addressing Butler's argument that the time for appeal had not yet begun to run, the court ruled that Butler had shown neither good cause nor excusable neglect for an extension of time to appeal under rule 4(e). Although the district court declined to address the interplay between rules 7(f)(2) and 54(b), it acknowledged that the issue "really . . . hasn't been clearly decided." The court also stated that this case would provide an opportunity for "the appellate courts [to] clarify who's right." Despite its acknowledgment that the rules were unclear, the district court denied Butler's motion to either proceed with her appeal or to extend the time to appeal and entered an order consistent with its ruling. Within one month of the district court's ruling, Butler filed a notice of appeal in which she stated her intent to appeal both the ruling on her motion to proceed with her appeal and the underlying Summary Judgment Ruling.

¶10 One day after Butler filed her appellate docketing statement, COP filed a motion for summary disposition. *See* UTAH R. APP. P. 10(a)(2) (explaining that a party may move for summary disposition within ten days after the docketing statement is filed). COP argues that Butler's appeal should be summarily dismissed because Butler failed to timely file a notice of appeal of the district court's Summary Judgment Ruling. Although COP no longer contends that the Summary Judgment Ruling alone meets the requirements of rule 7(f)(2), it argues that the subsequent Certification Order rendered the Summary Judgment Ruling a "final, appealable order and judgment . . . even if the original summary judgment decision was not in the form prescribed by rule 7(f)." COP further argues that the district court acted within its discretion in denying Butler's motion for an extension of the time to appeal. In short, COP argues that this court lacks jurisdiction to hear Butler's appeal and that her appeal must therefore be dismissed with prejudice.

¶11 Butler also filed a motion for summary disposition. She argues that the Summary Judgment Ruling lacked a necessary rule 7(f)(2) implementing order and that, although the district court subsequently directed entry of final judgment under rule 54(b) in its Certification Order, final judgment was never actually entered. Butler urges this court to dismiss her appeal without prejudice and

asks us to direct the district court to enter a rule 7(f)(2) order and a final rule 54(b) judgment.

¶12   Butler simultaneously filed a petition for an extraordinary writ.  Relying on the same arguments presented in her motion for summary disposition, Butler's petition asks this court to issue an order "compelling the [district court] to enter a rule 7(f)(2) order and a final rule 54(b) judgment."

¶13   We consolidate the motions for summary disposition and the extraordinary writ and hold that neither the Summary Judgment Ruling nor the Certification Order satisfied rule 7(f)(2) for purposes of triggering the time to appeal the Summary Judgment Ruling. We therefore dismiss this appeal without prejudice. We decline to grant Butler's petition for extraordinary writ because this is not a case where "no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a). Instead, having clarified the law, we conclude that the district court is now equipped to provide the appropriate remedy.

¶14   We have jurisdiction over Butler's appeal under Utah Code section 78A-3-102(3)(j) and over Butler's petition for extraordinary writ under Utah Code section 78A-3-102(2).

**STANDARD OF REVIEW**

¶15   The issue presented in this case is whether the district court has entered a final appealable order, which is an issue of appellate jurisdiction. *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 18, 44 P.3d 663.  Whether appellate jurisdiction exists is a question of law, which we review for correctness. *Id.*

**ANALYSIS**

I.  ALL ORDERS, INCLUDING INTERLOCUTORY ORDERS, MUST SATISFY RULE 7(f)(2) OF THE UTAH RULES OF CIVIL PROCEDURE

¶16   An appeal as of right may only be taken from a final order or judgment. UTAH R. APP. P. 3(a).  Rule 7(f)(2) of the Utah Rules of Civil Procedure prescribes the procedure for obtaining an order from which an appeal may be taken.  It states that "[u]nless the court approves the proposed order submitted with an initial memorandum, or unless otherwise directed by the court, the prevailing party shall, within fifteen days after the court's decision, serve upon the other parties a proposed order in conformity with the court's

decision." UTAH R. CIV. P. 7(f)(2) (2013).[2]

¶17 In *Central Utah Water Conservancy District v. King*, we clarified the requirements of rule 7(f)(2) and held that compliance with rule 7(f)(2) dictates the timing for filing a notice of appeal. 2013 UT 13, ¶ 15, 297 P.3d 619. We explained that under rule 7(f)(2), one of three events must occur before the time to appeal begins to run: "(1) the court approves an order submitted with an initial memorandum; (2) the court enters an order prepared by counsel and served on opposing counsel pursuant to rule 7(f)(2); or (3) the court explicitly directs that no additional order is necessary." *Id.* The second of these three options is the default mechanism for satisfying rule 7(f)(2) and will apply "unless the district court approves the proposed order submitted with a party's initial memorandum or when the district court explicitly directs that no additional order is required." *Id.* ¶ 10 (internal quotation marks omitted). Therefore, "if neither of the two exceptions to the default is present, the prevailing party has fifteen days in which to submit a proposed order." *Id.* ¶ 26. "If the prevailing party fails to submit" a proposed order in this time frame, "any party interested in finality—generally, the nonprevailing party—may submit an order." *Code v. Utah Dep't of Health*, 2007 UT 43, ¶ 7, 162 P.3d 1097.[3]

¶18 Satisfaction of one of these events is necessary not only for establishing finality of a judgment that resolves an entire case, but also "for ascribing finality to an interlocutory decision." *Houghton*

---

[2] As of May 2014, rule 7(f)(2) gives the prevailing party twenty-one days from the court's decision to serve a proposed order on the other parties. UTAH R. CIV. P. 7(f)(2) (2014). But we apply the rule that was in effect as of the relevant events in this case, which prescribed a fifteen-day time frame for the prevailing party to serve a proposed order. UTAH R. CIV. P. 7(f)(2) (2013).

[3] As we explained in *Code v. Utah Department of Health*, 2007 UT 43, ¶ 6 n.1, 162 P.3d 1097, and reiterated in *Central Utah Water Conservancy District v. King*, "when the prevailing party neglects its obligations under the rule, the appeal rights of the nonprevailing party *will extend indefinitely*." 2013 UT 13, ¶ 26, 297 P.3d 619 (internal quotation marks omitted). Because we recognize that "[s]uch an indefinite extension is contrary to notions of judicial efficiency and finality," we have asked "that our advisory committee review rule 7(f)(2) and address the possibility of endlessly hanging appeals." *Id.* ¶¶ 26–27.

*v. Dep't of Health*, 2008 UT 86, ¶ 11, 206 P.3d 287. Thus, an appeal from an interlocutory decision is ripe "only after strict compliance with rule 7(f)(2)." *Cent. Utah Water Conservancy*, 2013 UT 13, ¶ 17. Requiring rule 7(f)(2) compliance in the interlocutory context comports with our judicial policy that when parties intend to appeal interlocutory rulings, there is "no benefit to a system in which parties must guess, on a case-by-case basis, whether a judge's language in a memorandum decision implies, invites, or contemplates further action by the parties." *Code*, 2007 UT 43, ¶ 6 (alterations omitted) (internal quotation marks omitted).

¶19 Compliance with rule 7(f)(2), though necessary, is not sufficient to trigger the time to appeal an interlocutory ruling. Interlocutory rulings must also satisfy one of two additional conditions to be eligible for immediate appeal: (1) the district court, in its discretion, certifies the order as final under rule 54(b) of the Utah Rules of Civil Procedure, or (2) an appellate court grants permission to appeal an interlocutory order under rule 5 of the Utah Rules of Appellate Procedure.[4] Therefore, the time period for appealing an interlocutory ruling begins to run only after (1) compliance with rule 7(f)(2) *and* (2) satisfaction of either civil procedure rule 54(b) or appellate procedure rule 5.

¶20 In this case, the district court's Summary Judgment Ruling constituted an interlocutory ruling because, although it ended the litigation between Butler and COP, Ford remained a defendant in the case. To be appealable, therefore, the Summary Judgment Ruling must have (1) complied with rule 7(f)(2) and (2) been certified as final under rule 54(b) or been granted interlocutory review under appellate procedure rule 5.

¶21 Looking first to whether the Summary Judgment Ruling was rule 7(f)(2) compliant, it is clear that none of the three events described in *Central Utah Water* occurred. COP did not submit and serve a proposed order with its initial summary judgment memorandum, the court did not enter an order prepared by COP and served on Butler within fifteen days after the court's decision, and the court's written ruling did not explicitly direct that no additional

---

[4] We have also recognized that in some instances, "orders and judgments that are not final can be appealed if such appeals are statutorily permissible." *Bradbury v. Valencia*, 2000 UT 50, ¶ 12, 5 P.3d 649. But in this case, no statute exists that would have made the Summary Judgment Ruling immediately appealable.

order was necessary. Although Butler later lodged a proposed rule 7(f)(2) order with the district court as permitted by *Code*, the district court declined to sign and enter it.

¶22 The district court did, however, subsequently enter a Certification Order pursuant to rule 54(b). The determinative issue in this case is therefore whether the district court's Certification Order satisfied the requirements of both rule 7(f)(2) and rule 54(b) for the Summary Judgment Ruling. If so, the time for appealing the Summary Judgment Ruling began to run when the Certification Order was entered, and Butler's appeal of the Summary Judgment Ruling is untimely. We hold that although a district court may enter a single order that satisfies both rule 7(f)(2) and rule 54(b), it must do so by strictly and expressly complying with the requirements of both rules.

## II. ENTRY OF AN ORDER THAT IS RULE 7(f)(2) COMPLIANT IS A PREREQUISITE TO RULE 54(b) CERTIFICATION

¶23 Having addressed the requirements of rule 7(f)(2), we turn to the requirements of rule 54(b). Prior to the adoption of Rule 54(b), courts followed the "single-judicial-unit theory" to determine which orders were final and thus appealable. 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2653 (3d ed. 1998); *see also Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32 (1956) (discussing the judicial unit theory). Under this theory, any action—regardless of the number of parties or claims—was treated as a single unit and "only one appeal was permitted from any one action." WRIGHT, MILLER & KANE, *supra* § 2653. After promulgation of the Federal Rules of Civil Procedure, which allow for liberal joinder of parties and claims, "a need for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction" became apparent. *Sears, Roebuck*, 351 U.S. at 432. Rule 54(b) of the Federal Rules of Civil Procedure was adopted "[l]argely to meet this need." *Id.* at 432–33. Rule 54(b) of the Utah Rules of Civil Procedure is "modeled after and is identical in all material respects" to its federal counterpart. *Pate v. Marathon Steel Co.*, 692 P.2d 765, 767 (Utah 1984).

¶24 Rule 54(b) (of both the Federal and Utah Rules of Civil Procedure) "facilitate[s] the entry of judgments upon one or more but fewer than all the claims or as to one or more but fewer than all the parties in an action involving more than one claim or party." WRIGHT, MILLER & KANE, *supra* § 2654. The rule does this by granting district courts the discretion to "direct the entry of a final

judgment[5] as to one or more but fewer than all of the claims or parties . . . upon an express determination by the court that there is no just reason for delay and upon an express direction for the entry of judgment." UTAH R. CIV. P. 54(b); *see* FED. R. CIV. P. 54(b) (same).[6]

¶25 Not all interlocutory rulings qualify for rule 54(b) certification. As we first explained in *Pate v. Marathon Steel Co.*, 692 P.2d 765, 767 (Utah 1984), and more recently in *Powell v. Cannon*, there are

---

[5] Rule 54(a) clarifies that a judgment "includes a decree *and any order from which an appeal lies*." (Emphasis added.) Because an appeal lies only from a rule 7(f)(2) compliant order, *see supra* ¶¶ 17–18, satisfaction of rule 7(f)(2) is required in order to obtain a judgment.

[6] According to the final judgment rule, a judgment or order is final and thus appealable if it "dispose[s] of the case as to all the parties, and finally dispose[s] of the subject-matter of the litigation on the merits of the case." *Powell v. Cannon*, 2008 UT 19, ¶ 11, 179 P.3d 799 (internal quotation marks omitted). Interlocutory rulings that do not end the controversy between the litigants are generally not appealable until a final judgment has been entered. Moreover, when a case consists of multiple claims or multiple parties, a decision that disposes of less than all of the claims or all of the parties is generally not appealable until "the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." UTAH R. CIV. P. 54(b). Once final judgment is entered, all preceding interlocutory rulings that were "steps towards final judgment" merge into the final judgment and become appealable at that time. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see also* 10 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 54.25[5] (3d ed. 2014) (explaining that under the merger rule, an interlocutory order "merges into the final judgment that disposes of all the claims and parties and becomes appealable at that time").

But where an interlocutory order is certified as final under rule 54(b), that order does not merge into the final judgment that resolves the entire case. Instead, it stands alone as a final appealable order, and all prior interlocutory rulings that were steps toward the rule 54(b) certified interlocutory order merge into that final order.

Under the Utah Rules of Civil Procedure, therefore, when a rule 7(f)(2) compliant interlocutory order is certified as final under rule 54(b), all prior rulings that were steps toward the final interlocutory order merge into that order and become appealable at the time the rule 54(b) certification is entered.

three prerequisites to rule 54(b) certification: (1) "there must be multiple claims for relief or multiple parties to the action," (2) "the judgment appealed from *must have been entered on an order that would be appealable* but for the fact that other claims or parties remain in the action," and (3) "the trial court, in its discretion, must make a determination that there is no just reason for delay of the appeal." 2008 UT 19, ¶ 26, 179 P.3d 799 (emphasis added) (internal quotation marks omitted). This interpretation of Utah's rule 54(b) is consistent with interpretations of the parallel federal rule. *Pate*, 692 P.2d at 767; *see also* WRIGHT, MILLER & KANE, *supra* § 2656 (explaining that federal rule 54(b) sets forth the same three "basic conditions on its applicability").

¶26 The second rule 54(b) prerequisite—that the judgment be entered on an otherwise appealable order—is most relevant to our resolution of this case. This prerequisite requires a district court to finally decide "at least one claim or the rights and liabilities of at least one party" prior to granting rule 54(b) certification. *Id.* § 2656. In the federal system, a claim is not finally decided unless and until (1) it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," and (2) "*it is set out separately and entered* as required by Rule 58." *Id.* (emphasis added) (internal quotation mark omitted).

¶27 The federal rule 58, which serves a similar purpose to Utah's rule 7(f),[7] requires that "[e]very judgment and amended judgment must be set out in a separate document." FED. R. CIV. P. 58(a); *cf.* UTAH R. CIV. P. 7(f)(3) ("Unless otherwise directed by the court, all orders shall be prepared as separate documents . . . ."). Therefore, in the federal system, unless an interlocutory ruling satisfies rule 58's separate document requirement, that ruling does not qualify for rule 54(b) certification. Similarly, in Utah, unless an interlocutory decision satisfies rule 7(f)'s order requirements (both the procedural requirements of rule 7(f)(2) and the form requirements of rule 7(f)(3)), it does not qualify for certification under rule 54(b).

¶28 In sum, to qualify for rule 54(b) certification, a judgment must meet three requirements. First, it must be entered in an action

---

[7] *Cent. Utah Water Conservancy Dist. v. King*, 2013 UT 13, ¶ 27, 297 P.3d 619 (asking the Utah Committee on the Rules of Civil Procedure to look to federal rule 58(c) as an example for how Utah rule 7(f)(2) might address its finality conundrum).

involving multiple claims or multiple parties. Second, it must have been entered on an order that would otherwise be appealable but for the fact that other claims or parties remain in the action. An interlocutory order will only meet this "otherwise appealable" requirement if it ends the litigation on the merits as to at least one claim or one party *and* satisfies the requirements of rule 7(f). Third, the trial court, in its discretion, must make a determination that there is no just reason for delay of the appeal.

## III. A SINGLE ORDER MAY SATISFY BOTH RULES 7(f)(2) AND 54(b), BUT TO DO SO IT MUST STRICTLY COMPLY WITH THE REQUIREMENTS OF BOTH RULES

¶29 We now clarify the overlap between rule 7(f)(2) and rule 54(b). Because interlocutory decisions must comply with rule 7(f)(2), *see supra* Part I, and because an interlocutory decision does not qualify for rule 54(b) certification unless rule 7(f)(2) has been satisfied, *see supra* Part II, a district court may not certify as final an interlocutory ruling that has not met the requirements of rule 7(f)(2). Under this construction, the time for appeal begins to run only after both rules 7(f)(2) and 54(b) are satisfied.

¶30 This relationship between rule 7(f)(2) and rule 54(b) is similar to the relationship between rule 7(f)(2) and rule 3 of the Utah Rules of Appellate Procedure, which dictates how an appeal as of right may be taken. *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 34, 201 P.3d 966, *holding modified by Cent. Utah Water Conservancy Dist. v. King*, 2013 UT 13, 297 P.3d 619. Replacing the references to "rule 3" with "rule 54(b)" in our *Giusti* decision illustrates this point: "[W]hile [rule 54(b)] provides the substantive requirement for [an interlocutory] decision's finality . . . [rule 54(b)] does not eviscerate the procedural requirements of rule 7 for triggering the appeal period once a final decision is rendered." *Id.* Like rule 3 of the Utah Rule of Appellate Procedure, rule 54(b) works in concert with rule 7(f)(2).

¶31 Although, strictly speaking, rule 7(f)(2) compliance is a prerequisite to rule 54(b) certification, a district court may issue an order that satisfies both rules simultaneously. That is, a district court may issue a rule 7(f)(2) order for an interlocutory ruling and in the same order certify the ruling as final for purposes of appeal. But the combined order must strictly comply with the requirements of both rules.

¶32 For the combined order to comply with rule 7(f)(2), one of the three conditions discussed in *Central Utah Water* must occur. To

satisfy the first condition, a party must submit and serve a proposed combined order with its initial memorandum in support of or in opposition to the underlying motion and must include as part of the initial memorandum a motion for rule 54(b) certification. The second condition requires that the party who prevails on the underlying motion prepare and serve on the opposing parties a combined order in the manner provided by rule 7(f)(2).[8] This will generally require the party preparing and filing the combined order to also file a motion for rule 54(b) certification.[9] If the prevailing party fails to serve the proposed combined order within fifteen days after the court's decision, the nonprevailing party (or any party interested in finality), may then prepare and serve a proposed combined order as provided by rule 7(f)(2). The third rule 7(f)(2) condition is satisfied when the district court, in its ruling on the underlying motion, certifies the ruling as final under rule 54(b) and explicitly directs that no additional order is necessary. Until one of these conditions is satisfied, the appellate clock does not begin to run.

¶33 Looking specifically to the first rule 7(f)(2) option, the dissent would have us read rule 7(f)(2)'s reference to "an initial memorandum" to encompass later memoranda relating to motions other than the underlying motion to which the order applies (in this case, a memorandum in support of a motion for rule 54(b) certification). But this interpretation of "an initial memorandum" contradicts our precedent and is inconsistent with the language of rule 7(f)(2) as a whole. *See Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶ 17, 267 P.3d 923 ("[W]e read the plain language of our rules of civil procedure as a whole." (alterations omitted)

---

[8] Rule 7(f)(2) instructs the prevailing party to "serve upon the other parties a proposed order in conformity with the court's decision" "within fifteen days after the court's decision." UTAH R. CIV. P. 7(f)(2) (2013). Upon receiving service, the other parties have five days to make any objections to the proposed order. *Id.* After the expiration of the five days or upon being served with an objection, "[t]he party preparing the order shall file the proposed order." *Id.*

[9] Such a motion would be unnecessary in a situation where the district court rules on the initial motion, either from the bench or in a memorandum decision, simultaneously rules that rule 54(b) certification is appropriate, and then directs the prevailing party to prepare an order in conformity with its ruling.

(internal quotation marks omitted)). As we explained above, *supra* ¶ 17, among the three options for satisfying rule 7(f)(2), the default is the second: requiring the prevailing party, within fifteen days of the court's decision, to serve on the other parties an order in conformity with the court's decision. *Cent. Utah Water*, 2013 UT 13, ¶ 10.

¶34 The critical point for determining whether a prevailing party must prepare and serve a proposed order on the other parties is the moment when the district court makes its decision in the underlying matter. At that point, if the district court neither indicated in its ruling that no further order was required nor approved a proposed order submitted with the prevailing party's initial memorandum the only remaining option is for the prevailing party to prepare an order and serve it on the other parties within fifteen days of the district court's decision. *Id.* ¶ 26 ("Under rule 7(f)(2), if neither of the two exceptions to the default rule is present, the prevailing party has fifteen days [from the date of the court's decision] in which to submit a proposed order.").

¶35 The option of submitting a proposed order with "an initial memorandum" therefore cannot take place after the district court has ruled on the underlying matter. Thus, under rule 7(f)(2), the only "initial memorandum" with which a proposed order may be submitted is either the memorandum in support of or the memorandum in opposition to the *underlying* motion. *See Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 12, 199 P.3d 957 ("[T]he time for appeal begins to run with the entry of the prepared order, unless the court either approves a proposed order submitted with the initial memorandum or explicitly directs that no order is required.").

¶36 The dissent contends that this interpretation of rule 7(f)(2) creates "traps for unwary litigants." *Infra* ¶ 55. But by limiting the meaning of "initial memorandum" to only the memorandum in support of or opposition to the underlying motion, our interpretation promotes certainty in identifying the applicable memoranda. This not only allows the district court and the parties to know whether the default rule 7(f)(2) procedure is necessary, but it also prevents the possibility that a party will fail to realize that a proposed order submitted with a subsequent memorandum triggered the time to appeal a previous ruling (which is precisely what happened in this case under the dissent's interpretation of rule 7(f)(2)).

¶37 The dissent also asserts that our construction of interplay between rules 7(f) and 54(b) "undermines the doctrine of merger." *See infra* ¶¶ 45–55. We agree with the dissent's characterization of how merger operates in the context of an interlocutory ruling certified as final under rule 54(b). *See supra* ¶ 24 n.6. As the dissent explains, "[a]n appeal from a judgment made final under Rule 54(b) opens up the record [and permits review of all rulings that led up to the judgment] as to the parties involved in the appeal in the same way as an appeal from a final judgment that disposes of the entire action." *Infra* ¶ 49 (alteration in original) (quoting 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3905.1 n.22 (2d ed. Supp. 2014)).

¶38 But we fail to see how our decision disrupts this doctrine. As we have explained, if a district court erroneously certifies as final an interlocutory ruling for which no rule 7(f)(2) order exists, that certification will not be valid. And where an interlocutory ruling is not validly certified under rule 54(b), that ruling and all rulings leading up to it remain nonfinal for purposes of appeal, and merger does not occur. But once a valid rule 7(f)(2) order is entered and that order is properly certified as final under rule 54(b), the doctrine of merger takes full effect such that all rulings that led up to the certified order merge into that order and become reviewable on appeal.

¶39 Contrary to the dissent's assertion, *infra* ¶ 53, an appellant need not "secure [independent] compliance with rule 7(f)(2) for each and every interlocutory order encompassed by the rule 54(b) certification," because the ultimate rule 7(f)(2) order that is properly certified as final under rule 54(b) satisfies rule 7(f)(2) for all prior interlocutory rulings that merge into it (i.e., all interlocutory rulings that led up to the ultimate order). This is so regardless of which of the three rule 7(f)(2) methods the district court employs. So long as one of the methods has been strictly complied with at the time the district court grants rule 54(b) certification, all interlocutory rulings leading up to the ruling made final under rule 54(b) merge and become appealable at that time.

## IV. THE CERTIFICATION ORDER DID NOT MEET THE REQUIREMENTS OF A COMBINED RULE 7(f) AND RULE 54(b) ORDER

¶40 We now turn to the facts of this case. COP argues that the Certification Order satisfied both rule 7(f)(2) and rule 54(b), thereby rendering the Summary Judgment Ruling final for purposes of

appeal. We disagree. None of the three rule 7(f)(2) events occurred with respect to the Summary Judgment Ruling. The Certification Order was not submitted with COP's initial summary judgment memorandum. Therefore, while that order may have constituted a final order on the rule 54(b) certification itself,[10] it did not satisfy the first rule 7(f)(2) option for purposes of the Summary Judgment Ruling. Furthermore, the Certification Order did not satisfy the second rule 7(f)(2) option because COP did not serve it on Butler within fifteen days after the Summary Judgment Ruling. In fact, COP served the proposed rule 54(b) order on Butler at the same time COP filed it with the district court, thereby denying Butler a meaningful opportunity to object to the proposed order. And because the Summary Judgment Ruling did not explicitly direct that no further order was required, the third rule 7(f)(2) option was not satisfied. In short, the Certification Order did not bring the Summary Judgment Ruling into compliance with rule 7(f)(2). Certification under rule 54(b) was therefore inappropriate.[11]

¶41   Since the parties did not submit a proposed order with their initial summary judgment memoranda, and since the district court did not state in the Summary Judgment Ruling that no further order was required, before Butler can appeal the Summary Judgment Ruling, either COP or Butler must prepare and serve on the oppos-

---

[10] If one of the parties had intended to appeal the propriety of the district court's ruling on the motion for rule 54(b) certification, the entry of the Certification Order would have triggered the time to appeal that ruling.

[11] Butler also argues that the Certification Order was deficient in that it "directed" entry and certification of final judgment under rule 54(b). According to Butler, by including the verb "direct," the Certification Order contemplated further action. We acknowledge that use of this language gives rise to some uncertainty as to whether an additional order was required. Language such as "the court hereby certifies the ruling as final" would be clearer. However, we also recognize that the language used in the Certification Order appears to have been borrowed from the text of rule 54(b) itself, which reads, "[w]hen more than one claim for relief is presented in an action . . . the court may *direct* the entry of a final judgment." (emphasis added.) Because we find that the Certification Order failed to comply with the applicable rules on other grounds, we need not determine whether this language was deficient.

ing party a proposed order that complies with both rule 7(f)(2) and rule 54(b) and file it with the district court upon expiration of the time for any objections. When the district court signs and enters such a proposed order, the time for appeal will then begin to run.[12]

## CONCLUSION

¶42 The district court's "Order Directing Entry and Certification of Final Judgment Under Rule 54(b)" did not trigger the deadline for appealing the earlier Summary Judgment Ruling. Because the Certification Order failed to satisfy the requirements of rule 7(f)(2) with respect to the Summary Judgment Ruling, it also fell short of satisfying the requirements of rule 54(b). We therefore lack jurisdiction to hear this premature appeal and dismiss it without prejudice.

---

JUSTICE LEE, dissenting:

¶43 The order on appeal is an order of certification under Utah Rule of Civil Procedure 54(b). That order complied with Utah Rule of Civil Procedure 7(f)(2) because it was a "proposed order submitted with an initial memorandum" in support of a motion for certification under rule 54(b). On that threshold point the majority apparently agrees. *See supra* ¶ 40 (conceding that the 54(b) certification order "may have" satisfied rule 7(f)(2)).

¶44 Yet despite its apparent concession on this narrow point, the majority dismisses the appeal on the basis of a purported problem of finality under rule 7(f)(2). It holds, specifically, that the proposed order submitted by the Corporation of the President and signed by the court went only to the matter of 54(b) certification, and did not encompass the summary judgment decision that preceded it. The majority's analysis, in other words, proceeds in two steps: (1) the order granting summary judgment did not itself comply with rule 7(f)(2); and (2) the subsequent 54(b) order was itself final under rule 7(f)(2), but not in a manner encompassing—or curing the lack of finality regarding—the prior summary judgment decision. *Supra* ¶ 40.

---

[12] Because we dismiss this appeal as premature, and Butler will therefore have an opportunity to file a timely appeal, we need not address whether the district court erred in denying Butler an extension of time to appeal under rule 4(e) of the Utah Rules of Appellate Procedure.

Justice Lee, dissenting

¶45   I respectfully dissent. The court's analysis purports to be rooted in the terms of rule 7(f)(2). But although there may be a plausible basis in the abstract terms of the rule for the majority's approach, the rule also leaves ample room for a contrary construction. And because that contrary approach is more consistent with the longstanding doctrine of merger of judgments and with the policy and purpose of both rule 7(f)(2) and 54(b), I would interpret the rule to sustain the finality and appealability of the order in question. And in so doing I would reject what appears to me to be an unduly restrictive construction of rule 7(f)(2) that will yield troubling results in future cases.

¶46   The operative terms of rule 7(f)(2) accord finality to a "proposed order submitted with an initial memorandum." Utah R. Civ. P. 7(f)(2). In this case, the relevant order was the proposed order that the church submitted with its opening memorandum in connection with its motion for certification under Utah Rule of Civil Procedure 54(b). And the memorandum submitted in support of that order was accordingly an "initial memorandum" for purposes of rule 7(f)(2). That conclusion seems to me to follow from the very nature and function of a 54(b) order, which is to bundle a package of separate motions together to create one merged and appealable package subject to an appeal of right. With that in mind, the court's signature on the proposed 54(b) order should be deemed to fulfill the finality requirements of rule 7(f)(2)—as that order was then complete for rule 7(f)(2) purposes and thereafter subject to appeal.

¶47   The key question is the *scope* of the court's final decision on its 54(b) order. Again, the majority appears to concede this much, acknowledging, at least, that an appeal as to the propriety of "the district court's ruling on the motion for rule 54(b) certification" was appropriate. *Supra* ¶ 40, n.10. But the court proceeds to conclude that the scope of the 54(b) certification is somehow limited by the terms of rule 7(f)(2)—that the issues encompassed in the "initial memorandum" are limited to the issues specifically addressed by the motion attached to that memorandum, and do not encompass issues resolved on prior motions leading up to it.[1] And since the proposed

---

[1] The majority agrees that at least in some circumstances, a 7(f)(2)-compliant 54(b) order "satisfies rule 7(f)(2) for all prior interlocutory rulings that merge into it." *Supra* ¶ 39. But it appears to limit the application of the doctrine of merger to circumstances where the
(continued...)

order was filed with the 54(b) memorandum, and not the prior summary judgment memorandum, the majority concludes that the summary judgment decision is not final and thus not before us on appeal. *Supra* ¶ 40.

¶48 This strikes me as an unduly wooden application of the terms of rule 7(f)(2). In the context of a 54(b) motion, I would read rule 7(f)(2) to encompass the natural, ordinary understanding of a *proposed order* and *initial memorandum*—to encompass *the 54(b) certification order* and the *memorandum in support of the motion for certification*, whose obvious purpose is to render appealable all prior interlocutory orders relevant to the 54(b) certification.[2] And in this context, I would interpret the certification order that is before us on appeal—an order proposed by the Corporation of the President and signed by the district court—to encompass the underlying summary judgment order as a matter certified as final and appealable. That is the whole point of a 54(b) motion for certification, after all. To read rule 7(f)(2) to require the proposed order to be attached to the very first initial memorandum in the motion for summary judgment briefing—or risk excluding that decision from the ultimate certification for appeal—is to ignore the obvious point of certification under rule 54(b).

---

[1](...continued)
*method* of 7(f)(2) compliance is service of an order by the prevailing party. I see no legal or logical basis for this limitation, or for not extending the principle of merger to the method of 7(f)(2) compliance at issue here (of attachment of an order to an initial memorandum. For reasons explained below, I see no basis in 7(f)(2) for privileging one method of compliance over another.

[2] This is not to say that *any* other initial memorandum filed in the trial court would make the summary judgment order 7(f)(2)-compliant. *See supra* ¶ 33 (suggesting that my position "would have us read rule 7(f)(2)'s reference to 'an initial memorandum' to encompass later memoranda relating to motions other than the underlying motion to which the order applies"). I would agree that an attached memorandum *generally* renders 7(f)(2)-compliant only the order it leads up to. But a 54(b) order is different. For reasons explained below, a final 54(b) order—as informed by the doctrine of merger—cures any lack of finality in any pre-existing interlocutory orders.

¶49   The court's construction of rule 7(f)(2) also flies in the face of the longstanding doctrine of merger of judgments. This is an important doctrine of judicial economy and convenience. It forecloses the need for separate appeals from individual orders by establishing an administrative principle of merger—that interlocutory decisions merge into final, appealable ones. *See supra* ¶ 24, n.6 (citing 10 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 54.25[5] (3d ed. 2014) (noting that under merger doctrine an interlocutory order "merges into the final judgment that disposes of all the claims and parties and becomes appealable at that time")); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) (noting that merger avoids "having litigation punctuated by piecemeal appellate review of trial court decisions which do not terminate the litigation." (internal quotation marks omitted)). The final judgment rule and the principle of merger apply with equal force where the appealable judgment is a 54(b) certification; "[a]n appeal from a judgment made final under Rule 54(b) opens up the record [and permits review of all rulings that led up to the judgment] as to the parties involved in the appeal in the same way as an appeal from a final judgment that disposes of the entire action." 15A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3905.1, n.22 (2d ed. Supp 2014) (citing *Bowdry v. United Airlines, Inc.*, 58 F.3d 1483, 1488–89 & n.11 (10th Cir. 1995)). Thus, a 54(b) certification reaches back to all prior interlocutory orders encompassed by the certification. In so doing it bundles those orders together and makes them subject to a final appeal of right. A 54(b) certification that satisfies rule 7(f)(2) accordingly renders those same separate orders appealable for 7(f)(2) purposes as well.

¶50   The majority challenges this construction of 7(f)(2) on the ground that the "initial memorandum" option for complying with 7(f)(2) is time-limited—that under *Central Utah Water* this option must be satisfied at the time the underlying ruling is made, or not at all. *See supra* ¶ 17 (citing *Cent. Utah Water Conservancy Dist. v. King*, 2013 UT 13, ¶ 26, 297 P.3d 619 ("[I]f neither of the two exceptions to the default rule is present, the prevailing party has fifteen days in which to submit a proposed order.")). This contention is based on the notion that service by the prevailing party is the "default" way of complying with 7(f)(2) if the underlying order has no initial memorandum or explicit mention of finality, and the prevailing party is thereafter obligated to submit a 7(f)(2) order within fifteen days of the court's ruling. UTAH R. CIV. P. 7(f)(2).

JUSTICE LEE, dissenting

¶51   Again this strikes me as an unduly wooden construction of the rule. We have expressly held that the order to be filed by the prevailing party is not the end of the road under rule 7(f)(2); there must be a safety valve in the event the prevailing party fails to serve the order. Otherwise, the "appeal rights of the nonprevailing party [would] extend indefinitely." *Cent. Utah Water*, 2013 UT 13, ¶ 26 (emphasis omitted) (internal quotation marks omitted). We have crafted one such safety valve already, holding that if the prevailing party fails to serve the 7(f)(2) order within the required time, "any party interested in finality—generally, the nonprevailing party—may submit an order." *Code v. Utah Dep't of Health*, 2007 UT 43, ¶ 7, 162 P.3d 1097; *supra* ¶ 17. I see no reason to conclude that an initial memorandum submitted with a request for a 54(b) certification could not also operate as such a safety valve—establishing 7(f)(2) finality where it was not fulfilled at the time of the underlying order and no subsequent order has been filed by the parties. And because of 54(b)'s inherent purpose in bundling orders into one merged package, it seems to me a natural point at which to cure a 7(f)(2) deficiency for all orders within the 54(b) package.

¶52   The court's contrary decision undermines the doctrine of merger by establishing limitations not required by the text of rule 7(f)(2). And in so doing it introduces substantial uncertainty into the appellate process—and potential land mines for both appellants and appellees.

¶53   For appellants, the uncertainty will concern the scope of a final order of certification. An appellant who secures a rule 7(f)(2)-compliant order of certification would logically presume that such order preserves the right to appeal any interlocutory order leading up to it. But under today's decision that will not necessarily be the case. If the appellant has failed to secure compliance with rule 7(f)(2) for each and every interlocutory order encompassed by the rule 54(b) certification order, the 54(b) appeal will fail to deliver on its promise[3]—and the appellant will be foreclosed from challenging

---

[3] The majority demurs on this point, asserting that "the ultimate rule 7(f)(2) order that is properly certified as final under rule 54(b) satisfies rule 7(f)(2) for all prior interlocutory rulings *that merge into it*." *Supra* ¶ 39 (emphasis added). But the italicized basis for the court's response underscores the conflict between my approach and that of the majority. Specifically, the court does not conclude that "all

(continued...)

individual interlocutory decisions in the 54(b) appeal.

¶54   This also implicates a parallel problem for appellees. After a final 54(b) certification order is entered and the time for appeal has passed, the prevailing party will logically conclude that the 54(b) judgment is safe from appellate attack. Yet under the majority's approach that will not be true in some cases. After today's decision, a party holding an unappealable 54(b) judgment may nonetheless be subject to a subsequent appeal on any underlying interlocutory orders that were not rendered individually compliant with rule 7(f)(2). The majority, in fact, expressly acknowledges this possibility. *See supra ¶* 39.

¶55   These are problematic traps for unwary litigants. And these traps will also undermine the important goals of finality and judicial economy. We should avoid these problems if at all possible. I would do so by reading rule 7(f)(2) in a manner incorporating the doctrine of merger and informed by the nature of a 54(b) certification, as explained above.

¶56   For these reasons I dissent from the majority's dismissal of the appeal on jurisdictional grounds. And on the merits, I would affirm the denial of Butler's motion for extension of time to appeal under Utah Rules of Appellate Procedure 4(e).

¶57   Butler offered three grounds for excusing her neglect in not filing a timely notice of appeal: (1) her counsel's e-filing service failed to indicate that a Rule 54(b) order had been entered; (2) opposing counsel failed to mail a copy of the Rule 54(b) order; and (3) her counsel misunderstood the law of finality as it affected the appealability of the order. The district court rejected the latter two grounds as legally deficient, and understandably so. *See Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 9, 13 P.3d 616

---

[3](...continued)
prior interlocutory rulings" merge into a 7(f)(2)-compliant 54(b) order. (If it did, I would have no objection; that is my position.) Instead the court's holding is that only those "prior interlocutory rulings" that themselves satisfied rule 7(f)(2) "*at the time* the district court grants rule 54(b) certification" are merged into the 54(b) order. *Supra ¶* 39 (emphasis added). Therein lies the problem as I see it. For reasons explained herein, I would not require independent compliance with rule 7(f)(2) for each interlocutory order leading up to a 54(b) certification. I would instead deem the final 54(b) order to cure any 7(f)(2) problems by operation of the doctrine of merger.

JUSTICE LEE, dissenting

("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993))); UTAH R. CIV. P. 58A(d) ("[T]he time for filing a notice of appeal is not affected by this [service] requirement."). And as to the former, the court credited evidence that the failure of the e-filing service was not in the service itself but in counsel's own inexcusable neglect—in "fail[ing] to refresh the page on the service provider's webpage, which step, if taken, would have provided a current version of the docket."

¶58 The district court's denial of Butler's motion is reviewed under the deferential "abuse of discretion" standard of review. *See Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 6, 2 P.3d 447. I would affirm under that standard, recognizing the district court's firsthand familiarity with the evidence and the parties and its "broad" discretion to resolve fact-intensive matters such as the determination of "excusable neglect." *Id.* Among other things, it should be noted that Butler's counsel admitted to having seen a January 3 minute entry suggesting that an order had been entered. In light of that undisputed fact, the district court was well within its broad discretion in concluding that Butler's failure to file a timely notice was not excusable, but instead a result of counsel's negligence. I would defer to that judgment, and I would affirm.